IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN W. LONG,

        Petitioner,

v.                             Case No. 11-3120-SAC

STATE OF KANSAS, et al.,

        Respondents.

**MEMORANDUM AND ORDER**

This case comes before the Court on Petitioner's motion for a writ of habeas corpus pursuant to 28 USC § 2254.

**I. Procedural Background**

The procedural background of this case is undisputed. Following a jury trial, Petitioner was convicted in the District Court of Sedgwick County, Kansas, of one count of level 5 felony aggravated burglary and one count of misdemeanor theft. He was sentenced to a term of 136 months imprisonment. Petitioner appealed, but the Kansas Court of Appeals (KCOA) affirmed his conviction, *State v. Long*, 154 P.3d 556, 2007 WL 959616 (Kan. Ct. App., Mar. 30, 2007) (Case No. 95,472) (Unpublished Opinion), and the Kansas Supreme Court denied review.

Petitioner then filed a K.S.A. 60-1507 motion for post-conviction relief, but the District Court denied it. On appeal, the KCOA affirmed that denial.

*Long v. State*, 245 P.3d 1102, 2011 WL 434014 (Kan. Ct. App., Jan. 21, 2011) (Case No. 102,909) (Unpublished Opinion). Thereafter, the Kansas Supreme Court denied review. The parties agree that Petitioner has exhausted his administrative remedies.

## II. Underlying Facts

The facts of the case, as determined by the KCOA in Petitioner's collateral appeal, follow.

> The facts of the underlying crimes of conviction show that on May 23, 2005, around 9 a.m., Long broke into a house in south central Wichita. Floyd Geasland, the homeowner, taught in the Wichita public schools and had left for work much earlier. But he realized that he left an item he needed at home, so during a free hour he returned. Geasland knew something was amiss when he opened the front door to his house and saw that the living room had been ransacked. He heard someone on the back steps coming up from the basement and going out the back door. Geasland knew that the intruder could not get out that way because the yard was fenced. The intruder would have to take the driveway to the front of the house. Geasland waited there. Long came down the driveway carrying a satchel and a purple backpack. Geasland confronted Long, accused him of stealing, and then grabbed him by the football jersey he was wearing. Geasland attempted to drag Long back into the house. He wanted to get to a telephone inside to call the police, while detaining Long until officers arrived. But Geasland lost his balance on the front steps, and Long slipped out of the shirt and took off down the street with the backpack. In addition to sizing up Long generally during the confrontation, Geasland correctly observed that he had "a floating dollar" tattoo on his chest.
> 
> Geasland immediately called the police and furnished a description of Long as a young man with blond hair, about 5'11" tall and weighing about 150 lbs., shirtless, wearing blue jeans, and carrying a purple backpack. Within 15 minutes or so, a Wichita police officer patrolling in the area saw Long and recognized him as fitting that fairly unusual description—the purple backpack and the lack of a shirt were distinctive characteristics. The officer arrested Long. After being *Mirandized,* Long offered that someone had thrown him the backpack and then somebody else jumped him. Long was then

2

> transported to Geasland's house. Geasland identified Long as the burglar in a one-person show-up. At some point, Geasland also recognized items in Long's backpack to have been taken from his house and so informed the police.
>
> At trial, the prosecution's case generally followed those facts. The State had a police officer testify to Geasland's out-of-court identification of Long the day of the burglary. And Geasland made a positive identification of Long in court during the trial.
>
> Long testified in his own defense. He told the jury he met up with Jeremy Stallings, a friend of his, that morning. According to Long, they went to Geasland's house because Stallings said his uncle lived there and he needed to retrieve some of his belongings. Long testified that Stallings then entered the house with Long's backpack, came back out, returned the backpack, and went into the house a second time. At that point, Geasland arrived and went in the front door. Again, according to Long, Stallings came out the back door with the satchel, dropped it at Long's feet, and ran off. Long picked up the satchel and walked toward the front of the house where Geasland angrily confronted him. Long told the jury he did not enter the house, but understood that Stallings had authority from his "uncle" to do so.
>
> As we noted, the jury apparently didn't put much stock in the Stallings hypothesis and convicted Long. Based on an extensive history of burglary convictions, the trial court sentenced Long to 136 months in prison, reflecting the maximum term drawn from the grid based on the offense and his criminal record.

*Long*, 2011 WL 434014 at 2-3. Absent clear and convincing evidence to the contrary, a federal habeas court must presume that the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004).

### III. AEDPA Standard

This matter is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. ----,

3

130 S.Ct. 1855, 1862 (2010) (citation and internal quotation marks omitted). Under AEDPA, where a state prisoner presents a claim in habeas corpus and the merits were addressed in the state courts, a federal court may grant relief only if it determines that the state court proceedings resulted in a decision (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law" when: (a) the state court " 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' "; or (b) " 'the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent .' " *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Williams*, at 407–08. Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme

Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In order to obtain relief, a petitioner must show that the state court decision is "objectively unreasonable." *Williams,* 529 U.S. at 409 (O'Connor, J., concurring). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard,* 468 F.3d at 671.

## IV. Issues

Petitioner raises four issues, which the Court examines separately below.

### A. Erroneous Identification

Petitioner first asserts that the victim's statement identifying him to the police contradicts the victim's statement at trial. Allegedly, the victim initially told police that immediately upon entering the house, he saw Petitioner running out his back door. But at trial, the victim testified that he

5

heard someone several seconds after entering his house. Respondent counters that this alleged contradiction is, at best, a claim of trial error but it was never raised to the trial court or on direct appeal, so is defaulted under state procedural rules. *See See KAN. SUP. CT. R. 183(c); Rice v. State*, 37 Kan.App.2d 456, 459 (2007); *State v. Edwards*, 260 Kan. 95, 98 (1996).

A review of the record confirms that this claim is defaulted. Petitioner never raised this objection to the trial court, in his direct appeal, or in his K.S.A. 60-1507 motion. Petitioner did assert in his 60-1507 motion that his trial counsel was constitutionally ineffective for failing to challenge the victim's out-of-court identification, but he does not raise any claim of ineffective assistance of counsel in this habeas petition.

Where, as here, a trial error raised on habeas was never raised to the trial court or on direct appeal, there is a procedural default for purposes of federal habeas. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *see also Teague v. Lane*, 489 U.S. 288, 297-99 (1989). Therefore, this claim is barred from federal habeas review unless Petitioner can show cause for his default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that this Court's failure to consider these claims will result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 488-89, 496 (1986).

Petitioner does not allege that ineffective assistance of counsel or any other external matter constitutes cause for his failure to present these

6

claims to the state court. *See Coleman*, 501 U.S. at 750 (finding " 'cause' under the cause and prejudice test must be something external to the petitioner.") Neither has Petitioner shown actual prejudice. *See Long*, 2011 WL 434014 at *1 (finding no possibility of prejudice because Petitioner "pinned his chances for acquittal not on mistaken identity but on the notion he had been duped into unwittingly participating in the burglary by an unscrupulous friend.") The "cause and prejudice" exception is thus inapplicable.

Nor has Petitioner demonstrated that he qualifies for review under the fundamental miscarriage of justice exception. *See Herrera v. Collins,* 506 U.S. 390, 403–04 (1993). To be excused from procedural default on the basis of this exception, petitioner must supplement his constitutional claim with a "colorable showing of factual innocence." *Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986); *Brecheen v. Reynolds,* 41 F.3d 1343, 1356 (10th Cir. 1994), *cert. denied,* 515 U.S. 1135 (1995). Petitioner fails to do so. *Cf, United States v. Hickok,* 907 F.2d 983, 985 n. 2 (10th Cir. 1990) (finding defendant's assertion of his subjective belief in his own innocence insufficient). Accordingly, this claim is procedurally barred from federal habeas review.

### B. Trial Court's Coercive Statements to Jury

Petitioner next contends that the trial court's statements to the jury were coercive and forced the jury to continue its deliberation. Petitioner specifies only the following jury question and response from the trial judge:

> Q. During the commitment of a robbery by A & B, if person A was outside the house and person B was inside the house does the charge of aggravated burglary apply to both if another human was in the house.
>
> A. I cannot answer that question. As Instruction 9 states, in part, your verdict must be founded entirely upon the evidence admitted and the law as given in these instructions.

R. I, 56. Petitioner asserts that the jury's question shows that the state never made the evidence clear enough for the jury to reach a "complete verdict," and that the judge's response shows that the jury's question was never answered. Petitioner admits his presence at the scene of the burglary, but denies that his crime was aggravated in nature.

### State Court Decision

The KCOA reviewed this claim on direct appeal and found no error. *State v. Long*, 154 P.3d 556, 2007 WL 959616 at *1-2 (Kan. Ct. App., Mar. 30, 2007) (Case No. 95,472) (Unpublished Opinion). The court stated simply:

> All counsel approved of the court's response before it was given to the jury. The trial court did not abuse its discretion in its answer. The jury's examination of the instructions as given would have led it to the answer Long now belatedly suggests.

*Long*, 2007 WL 959616 at 2.

8

### Habeas Review

The KCOA's decision approving the trial judge's response was based on its interpretation of state law, and this Court cannot reexamine that ruling. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2006); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Petitioner's burden in this proceeding is to show that the state court's decision conflicts with clearly established *federal* law, but Petitioner has not articulated what federal constitutional violation he believes the trial court committed by its response to the jury's question. Nothing in the trial court's response appears to be contrary to, or involve an unreasonable application of, United States Supreme Court precedent.

In fact, federal cases examining similar circumstances find no basis for habeas relief. Under federal law, the jury is presumed to follow the Court's instructions, and is presumed to understand a judge's answer to its question. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (holding that where the judge responds to a jury question by directing the jury back to a constitutionally adequate instruction, the Constitution requires nothing more). Even when the judge's response to the jury's question is simply to direct the jury to review the instructions again, the defendant's due process rights are not violated. *Welch v. Workman*, 639 F.3d 980, 1004-05 (10th Cir. 2011) (finding trial court's non-responsive answer to jury question did not establish any grounds for federal habeas relief), citing *McCracken v. Gibson,*

9

268 F.3d 970, 980–81 (10th Cir. 2001), and *McGregor v. Gibson,* 219 F.3d 1245, 1256 (10th Cir. 2000), *overruled en banc on other grounds by* 248 F.3d 946 (10th Cir. 2001). Accordingly, this claim fails to establish any basis for federal habeas relief.

### C. Trial Court's Refusal to Include Instruction

Petitioner next claims that the trial court's refusal to instruct the jury on the lesser included offense of burglary denied him a fair trial.

The KCOA addressed this claim of error, but this Court need not review that analysis. This claim provides no basis for habeas corpus relief under federal law, as "[t]he Supreme Court has never recognized a constitutional right to a lesser included offense instruction in a non-capital cases." *Dockins v. Hines,* 374 F.3d 935, 938 (10th Cir. 2004). "[Tenth Circuit] precedents establish a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction." *Id. (citation omitted).* Federal habeas review is thus not available for this claim. Alternatively, the trial court's decision did not render the trial fundamentally unfair.

### D. Cumulative Error

Lastly, Petitioner claims that the trial court's cumulative errors deprived him of a fair trial.

The Tenth Circuit has recently summarized the framework for analyzing a claim of cumulative error as follows:

10

> In the federal habeas context, a cumulative-error analysis aggregates all constitutional errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Alverson v. Workman,* 595 F.3d 1142, 1162 (10th Cir. 2010) (internal quotation marks and brackets omitted). "[A]s the term 'cumulative' suggests, ... we undertake a cumulative-error analysis only if there are at least two errors." *Hooks[ v. Workman,* 698 F.3d 1148] at 1194–95 (10th Cir. 2012).

*Lott v. Trammell,* ___ F.3d ___, 2013 WL 142067, *54 (10th Cir. Jan. 14, 2013). The court has found no constitutional error in this matter, so there is no basis to support a claim of cumulative error.

## V. Evidentiary Hearing

The court finds no need for an evidentiary hearing. ("[A]n evidentiary hearing is unnecessary if the claim can be resolved on the record.)" *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) *Schriro,* 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## VI. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that

showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d 1232 (10th Cir. 2010). Petitioner has not met this standard as to any issue presented, so no certificate of appealability shall be granted.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk.1) is denied.

Dated this 19th day of March, 2013, at Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge